All the material facts of the case are stated in the opinion of the Court; which was delivered by
 

 Mr. Justice Duval.—
 

 An action was commenced in the Circuit Court, by the Unit-, ed States, against the plaintiff in error, to recover -the sum of 82337 60, which he had received from Mr .Leslie, the paymaster, then stationed at the seat of government, on a claim for double rations, due him in his capacity of Adjutant and1 In-spec, tor General of- the army of the. United States, from the
 
 *294
 
 30th of September 1818, to the 31st of May 1821. On the settlement of the account of the paymaster, this item was disallowed by the second Auditor, who considered it as wrongfully paid; and the'amount was afterwards directed to be charged to the personal account of General Parker.
 

 The office of Adjutant and Inspector General of the army, with the rank, pay, and emoluments of a Brigadier General, was created by the Act of March 3, 1813. The plaintiff in error was appointed to that office; and his commission bears date on the 1st May 1816, with the rank of Brigadier General, from 22d November 1814.
 

 The pay and emoluments of .the officers of the army, aré fixed by the Act of 16th March 1802; and the Act of 12th'April 1808. By the fifth section of the first mentioned Act, it is provided, that the commanding officers of each separate post, shall be entitled to such additional number of rations, as the President of the United States shall, from time to time, direct, having respect to the special circumstances of each post. Under this authority, the President has, at various times, designated military posts and stations, and allowed double rations to the commanding officers; and in the case of General Wilkinson, when stationed at New-Orleans, and commanding there, in quality of a commanding officer'at a separate post, he allpwed that officer treble rations. It appears by the record and documents referred to in this case, that on the 25th August 1812, the President ordered, that Generals commanding separate armies, should receive double rations.
 

 In February 1814, an order was issued by the War Department, on the subject of double rations, of which the following is an extract: — “It"is ordered, that General or other officers •commanding districts, shall, while so doing, receive double rations; which will’supersede all other grants of double rations at posts-within the district.”
 

 .Oh the 6th March. 1816, a general order was issued, in .the' words following: — “Generals commanding Divisions; Officers commanding Military Departments; and., all'officers while in the command of- permanent posts and garrisons, separate from the stations of commandants of departments, which subject them tb the additional expense of independent commands, are allow.ed double rations. No,more than one officer can be entitled to double rations, at the same station.”
 

 • The Adjutant and Inspector General performed the duties of his office from November 1814, and charged the compensation as allowed by law, until the year 1816, when a. difficulty arose on the subject of his fuel and quarters; from the circumstance of there being no disbursing office in the Quartermaster’s department, at the seat of government; ¿nd from the regulations
 
 *295
 
 of the War Department, then in force, prohibiting an allowance in money, to be made to officers in lieu of these emoluments. The Secretary of War then issued the following order: i“A commutation of double rations, is allowed to the Adjutant and Inspector General, in lieu of fuel and quarters.”
 

 Under this authority, he claimed and was allowed double rations from November-1814; refunding to the government the allowance he had received for fuel and quarters, from the time of his acceptance, until the date of the above order. He continued to receive double rations, making no charge for fuel and quarters, until"an order was issued by the Secretary of War, on the 10th of August 1818, to the following effect. “The reason for the allowance to the Chief of the Engineers, and to the Adjutant and Inspector General, in lieu of fuel and quarters, no longer existing, since the establishment of the Quartermaster’s department; at the termination of the present quarter, such allowance will cease; and the Quartermaster General will, on requisition, furnish them with fuel and quarters, agreeeably to their respective’ ranks.” The commutation of double rations, ceased accordingly; and the Adjutant and Inspector General continued to charge and receive single rations, only, from the first of October 1818, to the 31st May 1821, when the office Was abolished.
 

 The defendant in the Court below, now plaintiff in error, in support of his claim, produced a certificate from Richard Cutts, second comptroller of the Treasury; “ that the senior officer ' of the Engineer Department, stationed.at Washington, has" charged and been allowed double rations since the first of January 1818. The senior officers of the Quartermaster’s, Subsistence and Ordnance Departments, have charged and been allowed double rations since the 27th July 1821; and Major General Brown has charged and been allowed double rations, since the 1st of June 1821, when he was stationed in this city.” And also the following regulations: The regulation and general order of the 27th July, 1821, issued by the War Department,, allowing to the Quartermaster General, Commissary General of Subsistence, the Colonel of Engineers, and the Chief of the Ordnance Department; (while stationed at the seat of government,) double rations from the date of the said order.
 

 The regulations or general order, duly issued from the Wav Department, dated the 31st of May, 1821, addressed 'to the defendant, as Adjutant and Inspector General; directing him. among other things, to hand over the records and files of his office to Major General Brown, on the next day, being the first of June 1821; the said Major General having from the time he had assumed command, and had relieved the said Adjutant and Inspector General, at the seat of government, pursuant te the
 
 *296
 
 last mentioned order, been allowed and paid, double ration's, as certified by the second comptroller; which regulation or general order is in the following words: “ The Adjutant General, under the law of the 2d of March last, being attached to the Major General commanding the army, and now absent, you will, to-morrow, pass over the records and files of yóur office to Major General Brown, and will assume the duties of Paymaster General. Major General Brown has be.en advised of this order; and Colonel Towson yviU be- instructed to hand over the papers and records of the pay department to you/’ That the'Brigadiers General of the Army of the United States, have all been regularly allowed double rations, since the. said general order and regulation of the 6th of March 1816. That the defendant continued at the head of the department of Adjutant and Inspector General, and stationed at the seat of /govern-' ment, from the -'time of his appointment and commission,, as such, until the 31st of May 1821, and until he was relieved by Major General Brown as before mentioned.
 

 The defendant then proved, by Thomas S. Jessup, Quartermaster General, that in his opinion, and according to the general usage of the army, the department of Adjutant and Inspector General-was a military department; and that the defendant, whilst exercising that office, was commandant of a military department; and as such, was subject to the additional expense of an independent command.
 

 ■ The declaration in this cause is -founded on a transcript from the Treasury, certified in the usual form, and contained a' count for money had and received, and other counts not necessary to be mentioned; issue was joined on the plea- of
 
 non as-sumpsit;
 
 and by agreement of counsel, a verdict for the United States was taken for the sum claimed, subject to the opinion of the Court upon the laws of the United States relative to the jjay and emoluments of the officers of the army, and the regulations and orders of the executive department, issued in pursuance of those laws. The Court, on consideration, gave judgment in favour of the United States; and the cause is now before this Court, by writ of error, for their decision.
 

 The claim of- the plaintiff in error to double rations, as charged, rests altogether upon a correct construction of the 5th section of the Act of the 16th of March, 1802, and of the regulations and orders of the executive department, issued in pursuance of that.' section. The President of the United States has a discretionary power to allow such additional number of rations to officers commanding at separate posts, -as he may think just; having respect to the special circumstances of each post. The law granting this authority, is not imperative, and in the exercise of his. discretion, the President may allow, or
 
 *297
 
 refuse to allow, additional rations, as in his opinion he may deem just.
 

 The reason of the authority to grant the allowance is obvious. By an independent command, at a separate post, the of-' fleer is subject to additional expense, and an increase of duty. An officer may be said to command at.a separate post, when he is out of the reach of the orders of the Commander in chief, or of a superior officer, in command in the neighbourhood. He must then issue the necessary orders to the troops under his command; it being impracticable to receive them from a superior officer. His authority is the source from which they must flow.
 

 There can be no controversy about additional rations, if the President makes the allowance. He may issue the order himself, or it may be done by the Secretary of War, with his approbation. The Secretary of War, as the legitimate organ of the President, under a general authority from him, may exercise the power, and make the allowance to officers having a separate command'. The language of the law is plain and unambiguous. No officer is entitled to the additional allowance, unless he be a commandant at a separate post; and then the claim must be sanctioned by the Executive. The allowance cannot be made to more than one officer at the same station.
 

 It is not contended, in the case under consideration, that the grant was made by the President; but the plaintiff in error claims it under the orders which have been recited, and which are spread upon the record; and because officers of equal rank, and in his opinion similarly circumstanced, have received the additional allowance. Double rations form no part of the regular and legal emoluments of a Brigadier General, and can only be claimed under circumstances before enumerated. The plaintiff in error seems to rely, with more' confidence, on the order of the 6th of March 1816, taken in connexion with the opinion of General Jessup. That order directs the additional allowance to be made to Generals commanding' divisions, and to officers commanding military
 
 departments,
 
 &c.; and General Jessup' was of opinion, that, according to the general .usage of the army, the department of Adjutant and Inspector General, was a military department; aiid that whilst exercising that office,'he was commandant of a military department ; and, as such, subject to the expense of an independent command.
 

 The record contains no evidence, that the Adjutant and In-. spector General was ever ordered to an independent or separate command. In the discharge of his ordinary duties, he has no distinct command; his duties consist in details of Service, and not in active.military command. The order of the
 
 *298
 
 16th of'March 1816, directing double ¡rations to be allowed to officers commanding
 
 military
 
 departments, is construed to relate'to the geographical sections of country, into which the two divisions of the army aré divided, and which were denominated
 
 departments ;
 
 and intended to. design ate the extent of actual command, given to the officer commanding each department j and that it does not relate to the law of the 3d of March 1813, • for ■ the better organization of the general staff of the army. This appears to have been the construction given to the order by the war department, as none of the staff officers created by that Act, with the exception of the plaintiff in error, ever made a claim for double rations; and the claim under consideration, was disallowed by the accounting officers of the war department.
 

 During the time the Adjutant and Inspector General was stationed at the seat of government, comprehending the space for which double rations are claimed, it. does not appear, that there was any recognised commanding officer. The staff officers, then stationed at the seat of government, were subject to the authority of the Secretary of War, and under his direct and exclusive control.
 

 It is the opinion of the Court, that the claim of the plaintiff in error, is not sanctioned by the Act of the 16th of March 1802, nor by the regulations and orders of the executive department, issued in pursuance of that lawi
 

 The judgment of the Circuit Court is affirmed, with casts,